UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
THE SIDING AND INSULATION CO., :
f/k/a THE ALUMINUM SIDING & :
INSULATION CO., INC., :
:
: CASE NO. 1:11-CV-1074
Plaintiff, :
:
v. : ORDER
: [Resolving Doc. Nos. 4, 33]
BEACHWOOD HAIR CLINIC, INC., :
:
Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case involving alleged violations of the Telephone Consumer Protection Act, Plaintiff Siding and Insulation Company[1] moves to certify its claim against Defendant Beachwood Hair Clinic as a class action.[2] [Doc. 33.] Beachwood opposes the motion. [Doc. 35.] For the reasons below, the Plaintiff's motion for class certification is **GRANTED**.

**I. Background**

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227(b)(1)(C), prohibits, with exceptions for established business relationships and voluntary providers, the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." Siding and Insulation Company ("the Company") says that Defendant

---

[1] Formerly known as The Aluminum Siding & Insulation Company, Incorporated

[2] Along with its complaint, the Plaintiff filed an initial motion to certify a class, [Doc. 4], and the Court stayed that motion pending discovery, [Doc. 20]. Because this order resolves the issue of class certification, the Plaintiff's original motion is **DENIED** as moot.

-1-

Case No. 1:11-CV-1074
Gwin, J.

Beachwood Hair Clinic sent it two unsolicited faxes that advertised "Thinning Hair Solutions." Beachwood did not seek, or obtain, the Company's permission to send the faxes. [Doc. 34.]

The Company alleges that Beachwood hired a fax broadcaster, nonparty Business to Business Solutions ("B2B"), to send the advertisements. According to the Company's expert, B2B successfully transmitted Beachwood's fax 37,219 times to 16,847 recipients. Beachwood did not provide the recipient fax numbers to B2B; rather, B2B sent the faxes to numbers from a purchased database, InfoUSA. [Doc. 34.]

The Company seeks monetary and injunctive relief and moves to certify a class defined as, "All persons who were successfully sent one or more faxes between August 2006 and October 2006 from 'Beachwood Hair Clinic, Inc.' that advertised 'Thinning Hair Solutions.'" [Doc. 1; 33.]

## II. Legal Standard

A member of a class may sue, as a representative, on behalf of all class members only if the prerequisites of Rule 23(a) are met:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, "the court [must] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

Case No. 1:11-CV-1074
Gwin, J.

R. Civ. P. 23(b)(3).[3/]

Before the Court can certify a proposed class, it must conduct "a rigorous analysis" of the plaintiff's claims and their fitness for class-wide resolution. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). A decision on class certification is not, however, an adjudication of the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Rather, it is merely a determination "whether the requirements of Rule 23 are met." *Id.*

### III. Analysis

*A. Numerosity*

"While there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir 2006) (citing *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir.1996)). The Company alleges that Beachwood sent faxes to more than 16,000 recipients during its two-month advertising campaign.[4/] Drawing "reasonable inferences drawn from facts before [the court]," *Senter v. General Motors Corp*, 532 F.2d 511, 523 (6th Cir. 1976), the number of putative individual plaintiffs is in the thousands. Accordingly, the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

*B. Commonality*

The Court looks for "a common issue the resolution of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Even one common question will suffice. *In re Am. Med. Sys.*, 75 F.3d at 1080.

---

[3/] Federal Rules of Civil Procedure 23(b)(1) & (2), which provide two alternative bases for maintaining a class action, are not at issue here.

[4/] Beachwood's is incorrect that the class definition is too vague and inadequately identifies members. A motion for class certification does not require the exact number or identity of class members. *See Golden v. City of Columbus*, 404 F.3d 950 at 965-66 (6th Cir. 2005). The inquiry focuses on impracticability of joinder, not precise identity. *See id.*

-3-


Case No. 1:11-CV-1074
Gwin, J.

The proposed class involves a common legal theory, violations of the TCPA, and common fact questions: Is Beachwood's fax an advertisement? Did Beachwood obtain express invitation or permission to fax the advertisement? Moreover, the allegations indicate that each proposed class member received the unsolicited fax as the result of Beachwood's common conduct—that is, paying the fax broadcaster B2B to send out faxes from August 2006 through October 2006.

Contrary to Beachwood's suggestion, the commonality is not defeated by questions about Beachwood's relationships with individual recipients. Because Beachwood faxed recipient numbers on B2B's purchased database, the real question is the source of the numbers in that database. *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D.Wash 2007) ("Therefore, whether the recipients' inclusion in the . . . database constitutes express permission to receive advertisements via facsimile is a common issue."). Accordingly, the proposed class satisfies the commonality requirement.

C. Typicality

"A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citation and quotation marks omitted). The Company's claim, that Beachwood sent faxes in violation of the TCPA, "arise[s] from the same allegedly [] [prohibited] practice that gives rise to the claims of the other class members." *Id.*

Beachwood's argument that the Company lacks standing, and thus fails to establish typicality, is unsupported by the evidence. The Company signed and paid for the lease agreement for the fax machine. And the Company is registered to, and pays for, the telephone service for the fax machine.

Case No. 1:11-CV-1074
Gwin, J.

Consequentially, the Company suffered injuries resulting from Beachwood's alleged conduct and has standing.

The Company says it received the same fax as each of the other 16,000 recipients, and received it as the result of Beachwood's faxing campaign with B2B. [Doc. 34.] Therefore, the Company's claim arises from the same "course of conduct" as all other class members, and the proposed class satisfies the typicality requirement.

*D. Adequacy*

Rule 23(a)(4) requires adequate representation and "serves to uncover conflicts of interest between the named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations and quotation marks omitted). Adequacy has two requirements: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525.

As noted, the claims of the class, and the likely defenses against them, are common to the class. Based on its involvement thus far, the Court concludes that there is no reason to believe that the Company will not continue to vigorously prosecute the class's interests. The Court finds no antagonism between the Company's interests and the interests of the unnamed members of the class.

*E. Adequacy of Class Counsel*

Beachwood asserts that class counsel are inadequate to represent the proposed class. Rule 23(g)(4) requires that the Court appoint class counsel that will "fairly and adequately represent the interests of the class. In its evaluation of proposed class counsel, the Court considers: "(i) the work

Case No. 1:11-CV-1074
Gwin, J.

counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Citing two other cases in which two of the proposed class counsel (Bock & Hatch and Anderson + Wanca) failed to adequately represent the class, Beachwood says that these firms are inappropriate class counsel. Beachwood does not, however, allege improper conduct in this case.

Based on their extensive resumes, [Doc. 34-27; 34-28], and representations that they will "commit adequate resources" [Doc. 34], the proposed counsel "are qualified, experienced and generally able to conduct the litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). They appear to have extensive experience litigating class actions and TCPA claims. Accordingly, the Court finds that Climaco, Wilcox, Peca, Tarantino & Garofoli Co., LPA; Bock & Hatch; and Anderson + Wanca will "fairly and adequately represent the interests" of the proposed class. Fed. R. Civ. P. 23(g)(4).

*F. Predominance*

"To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (citations and quotation marks omitted). Though a particular "defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* (citations and quotation marks omitted).

Beachwood, through B2B, faxed its advertisement to more than 16,000 recipients. B2B

Case No. 1:11-CV-1074
Gwin, J.

obtained those recipient fax numbers from another source, InfoUSA. The question common to the proposed class "[i]s thus whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there [a]re therefore no questions of individual consent." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (citing *Kavu*, 246 F.R.D. at 647).

Similarly, Beachwood's proposed defense, that some recipients may fall under the TCPA's established business relationship exception, does not overcome the predominance of the common questions. Beachwood has presented no evidence that it had established business relationships with any of the more than 16,000 recipients of its faxes (Beachwood has had the list of those recipients since December 2009). Even if Beachwood can ultimately prove a few established relationships, a common question is still "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Finally, the potential for false positives and inaccurate data does not, as Beachwood suggests, suggest that the common issues predominate. To the contrary, the accuracy of the Company's methods for evaluating the data, as a whole, is yet another question common to the entire class.

Accordingly, the Court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members."

G. *Superiority.*

Finally, the Court must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). 47 U.S.C. § 227(b)(3)(B). Individuals are therefore unlikely to bring suit against

Case No. 1:11-CV-1074
Gwin, J.

Beachwood, which makes a class action the "superior mechanism for adjudicating this dispute." *Beattie*, 511 F.3d at 567. *See also Amchem*, 521 U.S. at 617 (1997) ("A class action solves this problem [of small individual recoveries] by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997))). The Court therefore finds that a class action is the superior method for adjudicating the claims.

IV. CONCLUSION

For the foregoing reasons, the plaintiff's motion for class certification is **GRANTED**. The Court **CERTIFIES** the following class:

> All persons who were successfully sent one or more faxes between August 2006 and October 2006 from "Beachwood Hair Clinic, Inc." that advertised "Thinning Hair Solutions."

Furthermore, the Court, based on its above reasoning and the Rule 23(g) factors, **APPOINTS** Climaco, Wilcox, Peca, Tarantino & Garofoli Co., LPA; Bock & Hatch; and Anderson + Wanca as class counsel.

IT IS SO ORDERED.

Dated: January 30, 2012              *s/ James S Gwin*
                                      JAMES S. GWIN
                                      UNITED STATES DISTRICT JUDGE